CERRO COPPER PRODUCTS *et al.*, Plaintiffs-Appellants, *v.* ILLINOIS COMMERCE COMMISSION *et al.*, Defendants-Appellees.—UNION ELECTRIC COMPANY, Plaintiff, *v.* ILLINOIS COMMERCE COMMISSION, Defendant.

Fourth District   No. 15350

Opinion filed September 25, 1979.—Rehearing denied October 23, 1979.

TRAPP, J., dissenting.

John P. Meyer, of Danville, and Lueders, Robertson & Konzen, of Granite City (Randall Robertson, of counsel), for appellants.

William J. Scott, Attorney General, of Chicago (Hercules F. Bolos, Special Assistant Attorney General, and James Weging, Assistant Attorney General, of counsel), William E. Jaudes, of Union Electric Company, of St. Louis, Missouri, and Robert Broderick, of Pope and Driemeyer, of Belleville, for appellees.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

On February 8, 1978, the Illinois Commerce Commission (Commission) entered an order granting Union Electric Company (UE) an increase in electric revenues of about $8,986,000. The plaintiffs here are certain large commercial customers of UE, and were intervenors in the proceedings before the Commission. They applied for rehearing before the Commission and contended that the Commission erred in developing and applying the schedule of rates set forth in Appendix A to its order because the rates did not conform to the findings of the order itself. Specifically, plaintiffs claimed that the Commission erred when it granted UE a 10.92% increase in rates to be allocated consistently with the maintenance of existing class-revenue relationships and then attached, as Appendix A, to its order a schedule of rates that did not maintain the class-revenue relationships. The application for rehearing was denied.

The plaintiffs appealed to the circuit court pursuant to section 68 of the Public Utilities Act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 72). The circuit court affirmed the Commission on the merits on January 4, 1979, and plaintiffs appeal to this court.

Section 65 of the Public Utilities Act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 69) requires the Commission to make findings of fact "and enter its order based thereon." The findings must be sufficient to permit of judicial review. (*Brinker Trucking Co. v. Illinois Commerce Com.* (1960), 19 Ill. 2d 354, 166 N.E.2d 18.) The Commission had made findings in this case and, as applicable to the issue on review, they are as follows:

"As hereinafter stated, the Company is currently engaged in a class cost of service study which is expected to be completed during 1978. Other than the four exceptions previously discussed, it was suggested by the Company, and the Commission is of the opinion, that it *would be appropriate to maintain existing class-revenue relationships* until such time as the results of the study would be available to the Company and this Commission for a more definitive adjustment if warranted by the results of the study.

The Commission is of the opinion that any increase in Illinois electric operating revenues allowed by this Order *should be assigned to the various service classifications utilizing approximately the same percentage increase* including customers served under Service Classifications 6 and 9, except for the four exceptions previously alluded to.

This Commission is aware, and the record in this case indicates, that the Company is currently engaged in the completion of a detailed class cost of service study which should indicate in a more definitive way the relationship of present costs to the rates applicable to various classifications of service. The cost of service study will not be available until after an Order must be entered by this Commission under the provisions of Section 36 of the Public Utilities Act. Necessarily therefor, the results of such study will not be available to this Commission and for that reason the Commission is of the opinion that *it is not appropriate to make any major adjustment in the existing class-revenue relationships of the various service classifications* but rather is *appropriate to substantially maintain the existing relationships.*" (Emphasis added.)

The Commission ordered that UE should file schedules and tariff sheets conforming to Appendix A, attached to the Commission's order, and consistent with the provisions of the order.

A 10.92% increase in revenues was granted to UE. From what has been stated thus far, one would expect that this 10.92% increase would be spread approximately evenly and each class of customers would have imposed upon them approximately the same percentage increase in rates. The existing class-revenue relationships would thus be maintained. We take this to mean that each class of customers would contribute the same percentage of UE's revenues under the new rate order as they did under the old. We also conclude that these relationships are to be maintained not because they are intrinsically sound, but because UE is currently engaged in cost-of-service studies. Pending the outcome of these studies, the Commission apparently intended to maintain the status quo as between users while granting a rate increase to UE.

What we would expect to follow from the quoted portions of the Commission's order is not what did follow. The rates to residential users were increased by 8.83%; small commercial and industrial users by 8.86%; large commercial and industrial, rate 9 users, 12.55%; and large commercial and industrial, rate 6 users, 12.56%. The plaintiffs here all fall into the latter two categories.

The plaintiffs argue that the rate increase imposed upon them is about one-third larger than that imposed upon residential customers. The defendants believe that plaintiffs are quibbling only over a couple of percentage points. The difference between a 10.92% increase and the increases actually ordered for the plaintiffs is this: For plaintiff Shell Oil Company it amounts to about $10,833 per month, and for all other plaintiffs about $23,500 per month.

■■ We conclude, as plaintiffs have argued, that the rates set forth in Appendix A to the Commission's order are inconsistent with the findings of fact contained in the body of the Commission's order. The Commission found that it would be appropriate to maintain existing class-revenue relationships until a cost-of-service study was available. The Commission found that any increase in revenues allowed by the order should be assigned to the various service classifications utilizing approximately the same percentage increase. That order is not challenged. Having made these findings, the Commission could only act in a manner consistent with the findings and "based thereon." (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 69.) This it did not do. It ordered that some customers pay 8.83% more while other customers pay 12.55% or 12.56% more. That it cannot do under the findings recited.

■■ The proceedings before the Commission were extensive, as rate-making proceedings unfortunately tend to be. The record is voluminous. The Commission's order is 16 pages in length. The order is replete with findings of fact, none of which are challenged here on appeal. The challenge here is to the rates set forth in Appendix A of the order. A long line of Illinois Supreme Court cases holds that a court on review may take only one of two possible courses of action. A court may confirm the order of the Commission, or a court may set the order aside. A court of review may not confirm one portion of an order and set another portion aside. *Illinois Commerce Com. v. New York Central R.R. Co.* (1947), 398 Ill. 11, 75 N.E.2d 411; *Brotherhood of R.R. Trainmen v. Terminal R.R. Association* (1942), 379 Ill. 403, 41 N.E.2d 481; *Brotherhood of R.R. Trainmen v. Elgin, Joliet & Eastern Ry. Co.* (1940), 374 Ill. 60, 28 N.E.2d 97.

■ In none of the cited cases did the supreme court deal with the circumstance confronting us here. We have an order that is not challenged and an appendage that is. It is our view that the specific findings of fact and the ordering portions of the Commission's order should control over an inconsistency contained in an appendage to the order. We, therefore, affirm the order of the circuit court which confirms the Commission's order, except that Appendix A is set aside. The cause is remanded to the Commission for the setting of rates that are consistent with the findings of fact previously made. A mere matter of arithmetic.

■■ The plaintiffs have also argued that the Commission improperly refused to accept new evidence tendered upon rehearing. Our review of the record leads to the conclusion that what the plaintiffs termed "new evidence" was merely computations made arithmetically by applying the rates contained in Appendix A to the test year data utilized by the Commission. Such computations cannot be considered evidence.

The last issue raised by the plaintiffs is that they will suffer great or irreparable harm if the Commission's order is not stayed during this appeal and any further appeal. This court had previously ordered a stay. The supreme court reversed and then denied rehearing on the reversal. Since we have set aside a part of the Commission's order, there is nothing remaining to be stayed.

The order of the circuit court is affirmed in part, and reversed in part. Appendix A to the Commission's order is set aside. The cause is remanded with directions.

Affirmed in part, reversed in part; remanded with directions.

GREEN, J., concurs.

Mr. JUSTICE TRAPP, dissenting:

The reading of the Commission order discloses that the Commission did not purport to direct a uniform increase of rates upon all classes of service. The initial determination of the Commission was that Union was entitled to a return of 9.25 percent on its adjusted original cost rate base. In making that determination the Commission made findings regarding the matter of Union's costs in supplying service to the respective classifications. One must conclude that the statement "that it would be appropriate to maintain existing class-revenue relationships * * *" must be read in such context.

The order noted that plaintiffs, denominated industrial intervenors, undertook to show a higher rate of return upon such classes of service "than the overall return received from other Illinois customers; * * *." As to such contention, the order finds:

> "[S]uch studies were based upon methods of allocation of property and expenses proposed in prior rate proceedings of Union by Industrial Intervenors. The Commission is once again of the opinion that Industrial Intervenors failed to justify a departure from the formulas used by the Company in this and other preceding rate cases which were accepted by the Commission in allocating property and expenses between the various rate jurisdictions in arriving at Respondent's Illinois operations."

In a portion of the order designated "ALLOCATION METHODS," the order states:

> "The allocation methods outlined in said supplemental report, as sometimes more fully explained by witnesses of the Company, were utilized by the Respondent for determining the costs of providing electric service in Illinois. Such methods have been

accepted by this Commission for rate making purposes in prior cases.

> With the exception of Respondent's allocation of total company Interruptible and Supplemental sales of * * *, as hereinafter altered, the Commission is of the opinion that such methods are again acceptable in determining Illinois electric operational data for rate making purposes in the instant case."

The rationale of the order is further discussed in the Commission's statement commenting upon the "current cost of service study." It was stated:

> "The Commission is of the opinion that historically, Union's existing rates, have been reasonably related to the cost of providing such service to customers served under the various rate classifications and that the rates approved by this Order are reasonably justified by the record in this case.

> This Commission is aware, and the record in this case indicates, that the Company is currently engaged in the completion of a detailed class cost of service study which should indicate in a more definitive way the relationship of present costs to the rates applicable to various classifications of service. The cost of service study will not be available until after an Order must be entered by this Commission under the provisions of Section 36 of the Public Utilities Act. Necessarily therefor, the results of such study will not be available to this Commission and for that reason the Commission is of the opinion that it is *not appropriate to make any major adjustment* in the existing class-revenue relationships of the various service classifications but rather is appropriate to substantially maintain the existing relationships." (Emphasis added.)

In the light of such statements which are made findings of fact, one must conclude that the schedule of rates fixed by the Commission order incorporated the allocation of differing costs for supplying service to the intervenors, and I cannot agree with the conclusion of the majority that the Commission should be directed to order a uniform percentage of rate increase in all classes of service.

I would affirm the order of the circuit court.